# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SHAUN MCCUTCHEON <br> P.O. Box 399 <br> McCalla, AL  35111, <br><br> MCCUTCHEON FOR FREEDOM <br> P.O. Box 399 <br> McCalla, AL  35111, <br><br> *Plaintiffs*, <br><br> v. <br><br> FEDERAL ELECTION COMMISSION <br> 1050 First Street NE <br> Washington, D.C. 20463, <br><br> *Defendant*. | Civil Action No. _____ |

## VERIFIED COMPLAINT FOR
## INJUNCTIVE AND DECLARATORY RELIEF
## AND PETITION FOR REVIEW

### INTRODUCTION

This case is about whether a presidential candidate who completely self-funded his campaign may contribute massive amounts of his own leftover campaign funds to a national political party committee.  Earlier this year, plutocrat Michael Bloomberg ran for the Democratic nomination for President.  Rather than attempting to raise funds from the American public, Bloomberg transferred nearly $1 billion of his personal funds to his candidate committee.  Despite completely blanketing the airwaves and social media through his unprecedented expenditures, he somehow managed to win less than 2% of the pledged delegates to the Democratic National Convention. Following this humiliating public rebuke from the Democratic electorate, Bloomberg hurriedly suspended his failed campaign and transferred $18 million in his campaign account to

1

the Democratic National Committee ("DNC") through an alleged loophole in federal campaign finance law.  *See* Dan Merica, et al., *Bloomberg Campaigns Transfers $18 Million to DNC*, CNN (3:26 PM Mar. 20, 2020), https://www.cnn.com/2020/03/20/politics/bloomberg-campaign-money-dnc/index.html; *see also* 52 U.S.C. § 30114(a)(4); 11 C.F.R. § 113.2(c).

It would have been patently illegal for Bloomberg to directly transfer $18 million of his personal funds to the DNC.  A person may contribute no more than $35,500 annually to the general account of a national political party committee. 52 U.S.C. § 30116(a)(1)(B); *accord* 11 C.F.R. § 110.1(c)(1)(i); *see also* 84 FED. REG. 2,504 (Feb. 7, 2019).  Bloomberg circumvented this restriction by transferring his personal funds through his presidential candidate committee to the DNC.  This procedure is known as the "Bloomberg Billionaire Loophole."

Plaintiff Shaun McCutcheon wishes to take advantage of the Bloomberg Billionaire Loophole.  He ran a completely self-funded campaign to seek the Libertarian Party's nomination for President but was ultimately unsuccessful.  He now wishes to transfer $50,000 of the personal funds he had deposited into his own campaign account to the general treasury of the Libertarian National Committee ("LNC").  McCutcheon reasonably believes there is a substantial likelihood that if he circumvents contribution limits in this manner, however, he will face the possibility of burdensome administrative investigations, civil penalties, and even referral for criminal prosecution for the next five years.  *See* 28 U.S.C. § 2462 (civil); 52 U.S.C. § 30145(a) (criminal). Unlike Democrats such as Bloomberg and the Clinton campaign (which illegally laundered $84 million in excessive campaign contributions in the 2016 election through Clinton's joint

fundraising committee and state party committees[1]), McCutcheon cannot count on the Democratic Deep State bureaucracy to turn a blind eye to his activities.

Consistent with D.C. Circuit precedent, *see Nat'l Republican Cong. Comm. v. Legi-Tech Corp.*, 795 F.2d 190, 193-94 & n.7 (D.C. Cir. 1986), and as permitted by federal law, *see* 52 U.S.C. § 30108(a)(1), McCutcheon and MFF sought an advisory opinion from the Federal Election Commission ("FEC" or "Commission") concerning the legality of his proposed transfer on May 29, 2020. Federal law requires the Commission to issue an advisory opinion within 60 days of receiving a "complete written request." 52 U.S.C. § 30108(a)(1). The Commission deemed their request "complete" as of June 9, 2020. On August 10, 2020, however, the Commission notified McCutcheon and MFF that, due to the absence of a quorum, it had failed to "render an advisory opinion in th[e] matter." *See* Letter from FEC to Shaun McCutcheon, Re: Advisory Opinion Request 2020-03 (Aug. 10, 2020) (hereinafter, "Closeout Letter"). Plaintiffs therefore bring this lawsuit to obtain injunctive and declaratory relief to protect them from administrative, civil, or criminal proceedings or penalties for transferring personal funds in McCutcheon's campaign account to the LNC's general treasury, notwithstanding any contribution limits set forth in the Federal Election Campaign Act ("the FECA"), as amended.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this case under 28 U.S.C. § 1331 because this case involves construction of the FECA, as amended, as well as FEC regulations.

---

[1] *See Hillary Victory Fund, et al.*, MUR 7304, First General Counsel's Report at 7-8 (Sept. 28, 2018), https://www.fec.gov/files/legal/murs/7331/19044466034.pdf (no action taken by Commission).

2. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)-(2), because the defendant is a federal agency which "resides" in this district and a substantial amount of the events and omissions giving rise to Plaintiffs' claims occurred here.

## PARTIES

3. Plaintiff SHAUN MCCUTCHEON is a candidate for the Libertarian Party's nomination for President in the 2020 election. He has announced that he has suspended his campaign for the time being, but such suspension does not terminate his status as a legal candidate. He is a resident of Alabama.

4. Plaintiff MCCUTCHEON FOR FREEDOM ("MFF") is McCutcheon's authorized candidate committee for the 2020 presidential election.

5. Defendant FEDERAL ELECTION COMMISSION ("FEC") is an independent federal agency charged with enforcing federal campaign finance laws, including the FECA. Its principal place of business is in Washington, D.C.

## MCCUTCHEON'S ADVISORY OPINION REQUEST

6. 52 U.S.C. § 30108(a)(1) provides, "Not later than 60 days after the Commission receives from a person a complete written request concerning the application of this Act . . . or a rule or regulation prescribed by the Commission, with respect to a specific transaction or activity by the person, the Commission shall render a written advisory opinion relating to such transaction or activity to the person."

7. Pursuant to this statute, on May 29, 2020, McCutcheon and MFF submitted an advisory opinion request to the Commission. A true and complete copy of the advisory opinion request is appended to this Complaint as Exhibit 1.

8. The request explained McCutcheon was seeking the Libertarian Party's nomination for President in the 2020 election, and he was constitutionally eligible to serve as President.

9. The request stated McCutcheon began his campaign on May 1, 2020, by obtaining an employee identification number and opening a bank account for his candidate committee, MFF.

10. The request explained McCutcheon's campaign was entirely self-funded. On May 6, he wired $50,000 of his personal funds to MFF. Later that month, he transferred an additional $15,000 of personal funds to the committee.

11. The request noted MFF uploaded a video announcing McCutcheon's candidacy to the Internet. McCutcheon and his small, scrappy team ran a vigorous virtual campaign due to the constraints imposed by COVID-19.

12. The request stated McCutcheon's campaign manager was Mike Byrne, a seasoned campaign manager on numerous Republican House and Senate campaigns. It further noted Ron Nielsen, who had been the campaign manager for Libertarian presidential candidate Gary Johnson in the 2012 and 2016 elections, served as Special Advisor to the McCutcheon campaign. McCutcheon also received volunteer assistance from other Johnson 2016 personnel.

13. The request specified McCutcheon's campaign had a website at http://www.mccutcheonforfreedom.com.

14. The request further said McCutcheon worked with several outside data providers and digital advertising firms to run paid political advertisements targeted directly to Libertarian Party members who were Libertarian National Convention delegates on Facebook. He also contacted these delegates directly through online advertisements served through their home IP addresses via a major third-party ad provider, and sent more than 500,000 e-mails and SMS messages.

15. The request noted MFF made a total of nearly $15,000 in expenditures in support of McCutcheon's campaign.

16. The request stated the Libertarian Party held its national convention over the Internet on May 23, 2020. McCutcheon did not receive the party's nomination for either President or Vice President.

17. The request explained McCutcheon had approximately $54,000 remaining in his candidate committee account, which he wished to transfer to the LNC's general treasury. It noted McCutcheon seeks to make this transfer at the earliest possible time so they can have the greatest impact over the course of the general election campaign.

18. The request added McCutcheon wishes to deposit additional personal funds into his campaign account, and then subsequently transfer those funds to the general unrestricted federal accounts of the LNC and likely the RNC, to ensure the defeat of (then presumptive) Democratic nominee, Joe Biden.

19. The request identified several potential legal obstacles that could lead the Commission to investigate McCutcheon, initiate administrative proceedings against him, impose civil fines, or refer him for criminal prosecution:

    a. There is a substantial risk the Commission will treat a transfer of MFF's remaining funds to the LNC as an illegal excessive contribution from McCutcheon himself to the LNC in violation of 52 U.S.C. § 30116(a)(1)(B) and 11 C.F.R. § 110.01(c)(1)(i) (establishing $35,500 annual limit); *see also* 84 FED. REG. 2,504 (Feb. 7, 2019) (providing inflation adjustments). All of MFF's funds originated with McCutcheon. They are subject to his plenary discretion and control. And he could decide at any time to immediately refund those funds to his personal account. *See Pike for Congress*, A.O. 2010-15, at 2-3 (Aug. 26, 2010). Under these

circumstances, the Commission may deem a contribution from MFF to the LNC to be a contribution from McCutcheon himself to the LNC.  Under those circumstances, the Commission could decide to treat the personal funds that McCutcheon transferred to MFF's account as McCutcheon's own funds, which are subject to the ordinarily applicable limits on contributions from individuals to national political party committees.  Under this reasoning, there would also be a substantial risk the Commission would treat a transfer of MFF's remaining funds to the LNC as an illegal contribution of McCutcheon's funds in the name of another, in violation of 52 U.S.C. § 30122; accord 11 C.F.R. § 110.4(b)(i), (iv).

        b.      There is a substantial risk the Commission will instead treat a transfer of MFF's remaining funds to the LNC as an illegally excessive contribution from MFF to a national political party committee, in violation of the limits on contributions from political committees (or other "persons") to national political party committees set forth in 52 U.S.C. § 30116(a)(1)(B) and 11 C.F.R. § 110.1(c)(1) (establishing $35,500 annual limit); *see also* 84 FED. REG. 2,504 (Feb. 7, 2019) (providing inflation adjustments).  The Commission might conclude that 52 U.S.C. § 30114(a)(4) does not allow a campaign committee to transfer to a political party committee unlimited amounts of a candidate's personal funds.  That provision states, "A contribution accepted by a candidate . . . may be used by the candidate . . . for transfers, without limitation, to a national, State, or local committee of a political party." 52 U.S.C. § 30114(a)(4).  The Commission may reason that a candidate's transfer of his own personal funds to his campaign committee's account does not qualify as "a contribution accepted by a candidate" for purposes of 52 U.S.C. § 30114(a)(4). A candidate cannot "accept" his own personal funds, which the candidate himself deposits into his own campaign account. Thus, when a candidate committee transfers funds it received from the candidate to a political party committee, its actions do not fall within the scope

7

of 52 U.S.C. § 30114(a)(4), but rather are subject to the ordinary limit on contributions from "persons" and other political committees to national political party committees.

    c.  There is a substantial risk that, if MFF transfers unlimited amounts of McCutcheon's personal funds to the LNC, the Commission will treat McCutcheon's initial transfer to MFF as an illegally excessive contribution from an individual to a candidate committee in violation of 52 U.S.C. § 30116(a)(1)(A) and 11 C.F.R. § 110.1(b)(1) (establishing $2,800 per election limit); *see also* 84 Fed. Reg. at 2,504.  A candidate has a constitutional right to make unlimited expenditures in support of his own campaign. *See Buckley v. Valeo*, 424 U.S. 1, 21, 51 (1976) (per curiam); 11 C.F.R. § 110.10.  The FEC has construed § 110.10 as allowing, a candidate to transfer unlimited amounts of personal funds to his or her candidate committee for the purpose of funding such expenditures. *See Mulloy*, AO 1984-60, at 2 (Jan. 11, 1985) (stating a candidate's right to "make unlimited expenditures from his or her personal funds[] includ[es] contributions to the candidate's principal campaign committee"); *accord Collins*, AO 1985-33 at 1 (Nov. 22, 1985). There is a fundamental constitutional distinction, however, between such expenditures and political contributions. *See Buckley v. Valeo*, 424 U.S. 1, 21, 51 (1976) (per curiam); *see also Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 196-97 (1981) (plurality op.).  The fact a candidate may make unlimited expenditures on behalf of his own campaign, including through the convenience of depositing his personal funds into his candidate committee's account to be spent from there, does not necessarily mean the candidate may make unlimited contributions of his personal funds to a political party committee by simply transferring them through his candidate committee.

20.  McCutcheon and MFF sought an advisory opinion request to prevent the chill to the exercise of their First Amendment rights created by the prospect of burdensome and intrusive

administrative proceedings, civil fines, and referral for criminal prosecution due to this uncertainty in campaign finance law.

21. McCutcheon's advisory opinion request asked the following three questions:

a. May Shaun McCutcheon transfer $50,000 of the personal funds he has deposited into the account of MFF, his authorized principal presidential candidate committee, to the general, unrestricted federal account of the Libertarian National Committee, Inc. ("LNC") (FEC ID #C00255695), a national political party committee?

b. If so, after making the transfer described above in #1, may McCutcheon deposit unlimited amounts of additional personal funds into MFF's account, and then transfer them to the general, unrestricted federal account of the LNC? If so, is there a date on which it would become illegal for him to do so?

c. May McCutcheon deposit unlimited amounts of additional personal funds into MFF's account and then transfer them to the general, unrestricted federal account of the Republican National Committee ("RNC"), a national political party committee, without regard to 52 U.S.C. § 30116(a)(1)(B)'s limits? If so, is there a date on which it would become illegal for him to do so?

22. McCutcheon submitted a declaration in support of the advisory opinion request, attesting to these facts. A true and complete copy of McCutcheon's declaration is appended to this Complaint as Exhibit 2.

**THE COMMISSION'S ILLEGAL FAILURE TO ISSUE AN
ADVISORY OPINION IN RESPONSE TO MCCUTCHEON'S REQUEST
DUE TO THE ABSENCE OF A QUORUM**

23. On June 9, 2020, Commission staff contacted McCutcheon's and MFF's undersigned counsel to obtain clarification on a few minor points connected to the request.

administrative proceedings, civil fines, and referral for criminal prosecution due to this uncertainty in campaign finance law.

21. McCutcheon's advisory opinion request asked the following three questions:

a. May Shaun McCutcheon transfer $50,000 of the personal funds he has deposited into the account of MFF, his authorized principal presidential candidate committee, to the general, unrestricted federal account of the Libertarian National Committee, Inc. ("LNC") (FEC ID #C00255695), a national political party committee?

b. If so, after making the transfer described above in #1, may McCutcheon deposit unlimited amounts of additional personal funds into MFF's account, and then transfer them to the general, unrestricted federal account of the LNC? If so, is there a date on which it would become illegal for him to do so?

c. May McCutcheon deposit unlimited amounts of additional personal funds into MFF's account and then transfer them to the general, unrestricted federal account of the Republican National Committee ("RNC"), a national political party committee, without regard to 52 U.S.C. § 30116(a)(1)(B)'s limits? If so, is there a date on which it would become illegal for him to do so?

22. McCutcheon submitted a declaration in support of the advisory opinion request, attesting to these facts. A true and complete copy of McCutcheon's declaration is appended to this Complaint as Exhibit 2.

**THE COMMISSION'S ILLEGAL FAILURE TO ISSUE AN
ADVISORY OPINION IN RESPONSE TO MCCUTCHEON'S REQUEST
DUE TO THE ABSENCE OF A QUORUM**

23. On June 9, 2020, Commission staff contacted McCutcheon's and MFF's undersigned counsel to obtain clarification on a few minor points connected to the request.

Commission staff then sent a follow-up e-mail memorializing that conversation. Undersigned counsel responded by e-mail. A true and complete copy of this exchange of correspondence is appended to this Complaint as Exhibit 3. The advisory opinion request was deemed "complete" upon receipt of that information on June 9.

24. In late July, Commission staff contacted McCutcheon and MFF through undersigned counsel, asking they waive or extend the statutorily mandated 60-day deadline for the Commission to respond to an advisory opinion request. McCutcheon and MFF declined, insisting on their right to obtain a ruling to eliminate the chill to the exercise of his First Amendment rights.

25. On August 10, 2020, FEC Associate General Counsel Nevin F. Stipanovic sent undersigned counsel for McCutcheon and MFF the Closeout Letter, stating "the Commission was unable to render an advisory opinion in this matter. . . . The Commission currently lacks a quorum of four Commissioners to take action on advisory opinion requests." A true and complete copy of the Closeout Letter is appended to this Complaint as Exhibit 4.

26. Neither the FEC's failure to address the advisory opinion request while it had a quorum, nor the Commission's failure to maintain a quorum, entitled the Commission to deny Plaintiffs their statutory right under 52 U.S.C. § 30108(c) to take advantage of the safe harbor an advisory opinion would have provided. Nor do such circumstances justify the Commission in burdening Plaintiffs' exercise of their First Amendment rights by leaving them uncertain about the potential applicability of sanctions for their political activities.

27. Due to the Commission's failure to act, McCutcheon and MFF now remain chilled from fully exercising their First Amendment rights by transferring the remaining $50,000 from MFF's account to the LNC. If they engage in the course of conduct described in the advisory opinion request without either an advisory opinion from the Commission or a ruling from this

Court, they face the substantial and realistic threat of burdensome and intrusive administrative proceedings, civil fines, or even referral for criminal prosecution for the next five years. 28 U.S.C. § 2462; 52 U.S.C. § 30145(a). But for these substantial and realistic threats, McCutcheon would have transferred the $50,000 from MFF's account to the LNC's general treasury account. In addition, McCutcheon would have transferred substantial additional personal funds to MFF's account, which would then be transferred to the LNC's and RNC's general treasury accounts. Due to these substantial and realistic threats if McCutcheon and MFF engage in these actions, a live, concrete controversy exists between McCutcheon and MFF on the one hand, and the FEC on the other.

28. Moreover, even if the Commission does not itself independently choose to act, a private party may challenge its decision to refuse to enforce federal campaign finance law against Plaintiffs, *see* 52 U.S.C. § 30109(a)(8), and even be permitted to enforce the relevant provisions itself, *id.* § 30109(a)(8)(C). "Therefore, even without a Commission enforcement decision, [Plaintiffs] are subject to litigation challenging the legality of their actions" if they are not protected by an advisory opinion. *Chamber of Commerce v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995).

29. McCutcheon and MFF exhausted the statutorily created administrative channel for obtaining an advisory opinion from the Commission, and gave the Commission the opportunity to exercise its primary jurisdiction over campaign finance law.

30. The Commission's failure to satisfy its duty under 52 U.S.C. § 30108 to render an advisory opinion on the legality of Plaintiffs' intended actions is arbitrary, capricious, and contrary to law.

## CAUSES OF ACTION

### COUNT I
### FIRST AMENDMENT VIOLATION
### Both Plaintiffs Against FEC

31.     Plaintiffs hereby incorporate by reference and re-allege the allegations in the preceding paragraphs.

32.     The Supreme Court has recognized individuals and political committees have a First Amendment right to make political contributions. Political contributions are an important form of political association and, to a lesser extent, political speech. Substantial burdens on political contributions trigger a "rigorous" form of intermediate scrutiny. *McCutcheon v. FEC*, 572 U.S. 185, 197 (2014).

33.     There is a substantial risk, when the Commission achieves a quorum, it will conclude it is illegal for Plaintiffs to transfer to the LNC's general treasury unlimited amounts of the personal funds he previously transferred to MFF. Likewise, there is a substantial risk, when the Commission achieves a quorum, it will conclude it is illegal for McCutcheon to transfer additional personal funds to MFF, which MFF may subsequently transfer to the LNC's general treasury account.

34.     By failing to fulfill its statutory obligation to issue an advisory opinion confirming the legality of McCutcheon's and MFF's intended course of conduct, the Commission has substantially burdened and chilled their exercise of First Amendment rights. *See Martin Tractor Co. v. FEC*, 627 F.2d 375, 384-85 (D.C. Cir. 1980) (holding the advisory opinion process "mitigates whatever chill may be induced by the statute [FECA]"). The Commission's failure to issue an advisory opinion subjects McCutcheon and MCC to a substantial risk of burdensome and intrusive administrative proceedings, civil fines, and even potential referral for criminal

prosecution. Moreover, even if the Commission does not itself independently choose to act, a private party may challenge its failure to enforce federal campaign finance law against Plaintiffs, *see* 52 U.S.C. § 30109(a)(8), and even be permitted to enforce the relevant provisions itself, *id.* § 30109(a)(8)(C); *see also Chamber of Commerce v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995).

35. By chilling Plaintiffs from engaging in statutorily permitted transfers to the LNC, the Commission is thereby chilling them from engaging in political association and speech protected by the First Amendment.

WHEREFORE, Plaintiffs are entitled to a declaratory judgment that the Commission violated the First Amendment. They are further entitled to an injunction barring the FEC from enforcing any provision of campaign finance law against Plaintiffs based on actions set forth in the advisory opinion request in which Plaintiffs may engage between now and such time as the Commission issues an advisory opinion deeming such conduct illegal.

## COUNT II
## VIOLATION OF 52 U.S.C. § 30108(a)
## **Both Plaintiffs Against FEC**

36. Plaintiffs hereby incorporate by reference and re-allege the allegations in the preceding paragraphs.

37. 52 U.S.C. § 30108(a)(1) provides, "Not later than 60 days after the Commission receives from a person a complete written request concerning the application of this Act . . . or a rule or regulation prescribed by the Commission, with respect to a specific transaction or activity by the person, the Commission shall render a written advisory opinion relating to such transaction or activity to the person."

38.   McCutcheon and MFF submitted an advisory request to the Commission on May 29, 2020. The request identified the specific transactions and activity in which they wished to engage. Specifically:

   a.   Plaintiffs inquired whether they may transfer $50,000 of the personal funds McCutcheon had deposited into MFF's account to the LNC's general treasury.

   b.   Plaintiffs further inquired whether McCutcheon may deposit unlimited additional amounts of personal funds into MFF's account, and then subsequently transfer them to either the LNC's general treasury, or the RNC's general treasury.

39.   On June 9, 2020, after Plaintiffs provided additional requested information to the Commission, the Commission deemed their request "complete."

40.   Plaintiffs' advisory opinion request concerned application of the FECA, as amended, and the Commission's rules and regulations.

41.   The Commission failed to render a written advisory opinion within sixty days of receiving Plaintiffs' complete written request. On August 10, 2020, the Commission notified Plaintiffs that it would not be issuing an advisory opinion due to the absence of a quorum.

42.   The Commission's failure to issue an advisory opinion deprived McCutcheon and MFF of the "safe harbor" which Congress established under 52 U.S.C. § 30108(c)(2). That section states: "Notwithstanding any other provisions of law, any person who relies upon any provision or finding of an advisory opinion in accordance with the provisions of paragraph (1) and who acts in good faith in accordance with the provisions and findings of such advisory opinion shall not, as a result of any such act, be subject to any sanction provided by this Act . . . ."

43.   As the D.C. Circuit has held, "The fact that the advisory opinion procedure is complete and deprives the plaintiff[s] of a legal right—[52 U.S.C. § 30108(c)'s] reliance defense,

14

which [they] would enjoy if [they] had obtained a favorable resolution in the advisory opinion process—'denies a right with consequences sufficient to warrant review.'" *Unity08 v. FEC*, 596 F.3d 861, 865 (D.C. Cir. 2010).

44. If McCutcheon and MFF engage in the course of conduct set forth in the advisory opinion request without the protection of an advisory opinion, they are subject to the prospect of burdensome and intrusive administrative proceedings, civil fines, and even referral for criminal prosecution. And even if the Commission itself does not or cannot proceed against them, private parties may nevertheless seek to directly enforce federal campaign finance law against them. *Id.* § 30109(a)(8)(C); *see also Chamber of Commerce v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995). WHEREFORE, Plaintiffs are entitled to a declaratory judgment from this Court that the Commission's refusal to issue an advisory opinion violated 52 U.S.C. § 30108(a), a declaratory judgment that Plaintiffs' intended actions are legally permissible, and an injunction prohibiting the FEC from initiating any investigation or administrative proceedings, or attempting to impose any sanctions, against Plaintiffs for engaging in such actions.

**COUNT III**
**VIOLATION OF ADMINISTRATIVE PROCEDURES ACT, 5 U.S.C. §§ 702, 706**
**Both Plaintiffs Against FEC**

45. Plaintiffs hereby incorporate by reference and re-allege the allegations in the preceding paragraphs.

46. Plaintiffs are suffering a legal wrong, adversely affected, and/or aggrieved due to the FEC's refusal to issue an advisory opinion concerning the legality of their intended course of action. The FEC's refusal to issue an advisory opinion deprives Plaintiffs of the right to a reliance defense under 52 U.S.C. § 30108(c)'s which they would have enjoyed if they had obtained a favorable resolution. *Unity08 v. FEC*, 596 F.3d 861, 865 (D.C. Cir. 2010).

47. Plaintiffs seek relief other than monetary damages.

48. The FEC acted under color of legal authority.

49. Plaintiffs exhausted their administrative remedies by filing their advisory opinion request.

50. The FEC's refusal to issue an advisory opinion was made final by its Closeout Letter of August 10, 2020.

51. There is no other adequate remedy in a court for the harm Plaintiffs have suffered from the FEC's illegal conduct.

52. The FEC unlawfully withheld an advisory opinion from McCutcheon and MFF by failing to issue an advisory opinion within 60 days of their request becoming final.  5 U.S.C. § 706(1).  The FEC likewise unlawfully withheld the statutory safe harbor to which 52 U.S.C. § 30108(c)(2) entitles them.  *See* 5 U.S.C. § 706(1).

53. The FEC maintained a quorum for at least some portion of the 60-day period.  Its failure to maintain a quorum throughout the rest of that period neither establishes an exception to the 60-day deadline nor is a valid basis for depriving Plaintiffs of their statutory safe harbor under 52 U.S.C. § 30108(c), which would prevent Plaintiffs from being subjected to investigations, administrative proceedings, civil fines, and criminal referrals throughout the five-year statutory of limitations period.

54. The FEC's failure to issue an advisory opinion within 60 days of McCutcheon's and MFF's request becoming final was arbitrary, capricious, an abuse of discretion, and not in accordance with law.  5 U.S.C. § 706(2)(A).

WHEREFORE, Plaintiffs are entitled to a declaratory judgment from this Court that the Commission's refusal to issue an advisory opinion violated 52 U.S.C. § 30108(a), a declaratory

judgment that Plaintiffs' intended actions are legally permissible, and an injunction prohibiting the FEC from initiating any investigation or administrative proceedings, or attempting to impose any sanctions, against Plaintiffs for engaging in such actions.

## COUNT IV
## DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201
## Both Plaintiffs Against FEC

55. Plaintiffs hereby incorporate by reference and re-allege the allegations in the preceding paragraphs.

56. This case presents an actual controversy within this Court's jurisdiction.

57. Plaintiff seeks a declaration of its rights under campaign finance law to engage in certain specified transfers.

58. A live, actual, concrete, crystallized controversy exists between Plaintiffs and the Commission.

59. Plaintiffs exhausted administrative remedies by filing their advisory opinion request. By filing the advisory opinion request, Plaintiffs also extended the Commission an opportunity to exercise primary jurisdiction over the issue.

60. The Commission has taken final agency action in this matter by refusing to issue an advisory opinion concerning the legality of Plaintiffs' proposed course of conduct.

61. A declaratory judgment concerning the legality of Plaintiffs' proposed course of conduct would remove the chill to the exercise of their First Amendment rights and provide necessary guidance to allow them to confirm their behavior to federal law's requirements.

WHEREFORE, Plaintiffs are entitled to a declaratory judgment from this Court that Plaintiffs' proposed course of conduct is legally permissible.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1. Preliminary and permanent injunctions prohibiting the FEC from commencing any administrative proceedings, voting in favor of any administrative complaint, conducting any investigation, imposing any civil fines or other sanction, or making any criminal referral against McCutcheon or MFF for the following proposed actions:

    a. McCutcheon transferring the $50,000 of personal funds remaining in MFF's account to the LNC's general treasury, or

    b. McCutcheon transferring additional personal funds into MFF's account, in any amount, regardless of any contribution limits established by the FECA, and subsequently transferring such funds to either the LNC's general treasury or RNC's general treasury;

2. A declaratory judgment holding:

    a. The Commission violated 52 U.S.C. § 30108(a)(1) by failing to issue an advisory opinion within 60 days of receiving Plaintiffs' complete advisory opinion request, and instead issuing the Closeout Letter as final agency action;

    b. Neither the FECA, as amended, nor Commission regulations, prohibit:

        i. McCutcheon from transferring the $50,000 of personal funds remaining in MFF's account to the LNC's general treasury, or

        ii. McCutcheon from transferring additional personal funds into MFF's account, in any amount, and subsequently transferring such funds to either the LNC's general treasury or RNC's general treasury;

    c. Plaintiffs are entitled to the same legal protections for engaging in the conduct set forth in Paragraph 2(b)(i)-(ii) of this Prayer for Relief as if the Commission had issued

an Advisory Opinion affirming the legality of such conduct pursuant to 52 U.S.C. § 30108(a)(1). Accordingly, the FEC may not commence any administrative proceedings, vote in favor of any administrative complaint, conduct any investigation, impose any civil fines or other sanction, or make any criminal referral against McCutcheon or MFF for engaging in such actions;

3. Costs and attorneys' fees pursuant to any applicable statute or other authority; and

4. Such other relief as this Court deems just and equitable.

Respectfully submitted,

Dated September 4, 2020

/s/ Dan Backer
Dan Backer, DC Bar #996641
POLITICAL.LAW PLLC
441 N. Lee St., Suite 300
Alexandria, VA 22314
Phone: (202) 210-5431
Fax: (202) 478-0750
dan@political.law

*Counsel for Plaintiff Shaun McCutcheon and McCutcheon for Freedom*

**VERIFICATION**

I, Dan Backer, declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge. Executed on September 4, 2020.

/s/ Dan Backer
*Counsel for Plaintiff Shaun McCutcheon and McCutcheon for Freedom*